**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| Ephraim Slaton and Gwendolyn Tolliver, as Personal Representatives of the Estate of Matthew Green, Jr., decedent, )<br>)<br>) | Civil Action No. 3:15-00627-JMC |
| Plaintiffs, ) | |
| v. ) | |
| Correct Care Solutions, LLC, ) | **ORDER AND OPINION** |
| Defendant. ) | |

Plaintiffs Ephraim Slaton and Gwendolyn Tolliver ("Plaintiffs") filed this wrongful death action against Defendant Correct Care Solutions, LLC, ("Defendant"), alleging medical malpractice for actions taken by Defendant's employees which resulted in the death of Matthew Green, Jr. ("Decedent"). (ECF No. 1-1 at 10 ¶ 36.) This matter is before the court on Defendant's Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56. (ECF No. 34.) This court **DENIES** Defendant's motion for the reasons stated herein.

**I.    RELEVANT BACKGROUND TO PENDING MOTION**

On August 16, 2011, Decedent was arrested and escorted to the Alvin S. Glenn Detention Center for public drunkenness. (ECF No. 1-1 at 6 ¶ 5.) Defendant is a private contractor providing medical services at Alvin S. Glenn. (ECF No. 1-1 at 5-6 ¶ 2, 6.) During the booking process, it is alleged that Decedent was combative such that Alvin S. Glenn officers could not complete the booking process and were required to use force, specifically a neck hold, in order to place Decedent in a holding cell. (ECF No. 1-1 at 6 ¶ 7.) Defendant's agent and employee, Dwayne Brown ("Brown") who is a Certified Nurse Aid, was located in the booking area for the purposes of conducting an intake screening on Decedent. Brown did not conduct the screening

1

because Decedent was placed in a holding cell. However, Brown did briefly look into the cell through a window to check on Decedent. (ECF No. 1-1 at 6 ¶ 8.) Thereafter, Alvin S. Glenn officers informed Brown that Decedent was lying on the floor of the cell. The officers then opened the cell door and called a "code blue." (ECF No. 1-1 at 7 ¶ 10.) Brown and other employees of Defendant performed CPR on Decedent until emergency medical services arrived on the scene. Decedent was transported to the Dorn Veterans Hospital where he died eight days later. (ECF No. 1-1 at 7 ¶ 12.)

On January 8, 2015, Plaintiffs, the personal representatives of the estate of Decedent, filed this lawsuit in the Richland County, South Carolina, Court of Common Pleas alleging wrongful death and survivorship causes of action based on Defendant's gross negligence. (ECF No. 1-1.) On February 11, 2015, Defendant removed the action to federal court based on this court's diversity of citizenship jurisdiction. (ECF No. 1.) On March 14, 2016, Defendant filed a motion for summary judgment. (ECF No. 34.) Subsequently, Plaintiffs filed a response in opposition on March 30, 2016. (ECF No. 38.) Defendant filed a reply to Plaintiff's response. (ECF No. 39.) A hearing on the motion was held on May 11, 2016.

## II.     LEGAL STANDARD

A.     Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party.

*Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

### III.     ANALYSIS

The case before this court asserts that Defendant was negligent in failing to provide prompt and adequate medical care to Decedent, which ultimately lead to his death. In order to prevail on their claim, Plaintiffs must show that (1) Defendant owed Decedent a duty; (2) Defendant breached that duty by a negligent act or omission; (3) Defendant's breach was the actual and proximate cause of Decedent's injury; and (4) Decedent suffered an injury. *Madison ex rel. Bryant v. Babcock Center, Inc.*, 638 S.E.2d 650, 656 (S.C. 2006). Because this negligence action is a medical malpractice claim, Plaintiffs are required to produce expert testimony in order to establish the duty owed to Decedent and the breach of that duty. *Dawkins v. Union Hosp. Dist.*, 758 S.E.2d 501, 503 (S.C. 2014). The expert's testimony should demonstrate "(1) the generally recognized and accepted practices and procedures that would be followed by average, competent practitioners in the [practitioner's] field of medicine under the same or similar circumstances, and (2) that the [practitioner] departed from the recognized and generally accepted standards." *Melton v. Medtronic, Inc.*, 698 S.E.2d 886, 893 (S.C. Ct. App. 2010). Defendant contends that it is entitled to summary judgment because Plaintiff has failed to produce admissible evidence to show that Defendant breached an established duty of care to Plaintiffs.

A. ADMISSIBILITY OF PLAINTIFFS' EXPERT'S REPORT

As a threshold matter, Defendant asserts that Plaintiffs' expert's report should not be relied upon because 1) it is not based on any reliable scientific methods or data analysis and 2) it is based on false information. Thus, Defendant asserts that Plaintiffs' expert is not reliable pursuant to FRE 702. Plaintiffs counter that although the expert's opinions are not based on

scientific data, she is permitted to form opinions based on her extensive experience in the nursing industry.

"Under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, expert testimony is admissible if it: (1) concerns scientific, technical, or other specialized knowledge; (2) that knowledge will assist the trier of fact to understand or resolve a fact at issue; and (3) the witness is qualified as an expert based on knowledge, skill, experience, training, or education." *Columbia Commc'ns Corp. v. EchoStar Satellite Corp.*, 2 F. App'x 360, 369 (4th Cir. 2001). When assessing testimony based on experience, the court must require the expert to "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007). The focus of the inquiry into admissibility of expert testimony "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993).

Amy Crittenden ("Crittenden"), Plaintiffs' nursing expert, indicates that her opinion is based upon her knowledge, training, and over thirty years of experience as a nurse who has previously worked in various positions in the correctional health care setting for about ten years. Furthermore, she indicated that she referred to a number of regulatory texts including South Carolina's Minimum Standards, the Nurse Practices Act, the standards of the American Correctional Association and the National Commission on Correctional Healthcare, and Defendant's own policies and procedures. She also reviewed the video along with reports and medical records associated with this case. She testified to a reasonable degree of certainty that Defendant's agent, Brown, failed to provide timely emergent medical care to Decedent by failing to conduct the intake screening as required. She further indicated that this delay ultimately

4

contributed to Decedent's irreversible deterioration, and death. Although Defendant might disagree with Crittenden's opinions, they are not inherently unreliable. Contrary to Defendant's assertion, though it would be helpful, there is no case law which requires an expert to cite to the specific statute relied on in order for it to be deemed reliable. Furthermore, in her deposition, Crittenden specifically cited to *Estelle v. Gamble* as the basis for her opinion that medical providers in a correctional setting owe a duty of care to prisoners in the facility. (ECF No. 34-5 at 57:15-21.) Additionally, her opinions concern specialized knowledge in the area of providing medical care as a nurse in a correctional setting. Such knowledge bears on whether Defendant had a duty to Decedent, as well as the standard of care and whether Defendant adhered to it. At this juncture, the witness is seemingly qualified based on her experience and reliance on regulatory documents common within the nursing and corrections industries.

Defendants also argue that Crittenden relied upon false information in reaching her conclusions, namely that she apparently indicated in her deposition that she believes that Defendant's agent, Brown, witnessed the neck hold contrary to testimony that he did not. Defendant asserts that because Crittenden is not qualified as a human factors expert dealing with visual perception, she cannot view the video[1] and determine that Brown saw Officer Jenkins carrying a "combative" Decedent through the booking area in a neck hold. Even though Crittenden responded to questioning during her deposition which would indicate that she believes Brown witnessed the neck hold, based on this court's review of her report, it does not appear that her findings regarding Defendant's duty and alleged breach were based on her belief

---

[1] Plaintiffs provided the court with a copy of the video. Plaintiffs assert that the video reveals officers of the Alvin S. Glenn Detention Center forcibly carrying Decedent from the pre-booking area to a holding cell. The court notes that the officers carried Decedent past a desk area where at least one person dressed in scrubs was standing. Based on this court's review, there is a dispute of fact as to whether the person in scrubs is an employee of Defendant who also witnessed the officers using the alleged excessive force on Decedent.

5

that Brown saw the neck hold. Her findings were based on personal observation, review of documents, experience, and reference to industry texts.  This court inquires into the principles and methodology, not the conclusions.  Accordingly, there is no indication that Crittenden used faulty principles or unreliable methodology, nor is there any indication that she is lacking in experience or specialized knowledge.  Ultimately, a jury will determine whether Brown, or some other agent of Defendant, saw the neck hold after viewing the video and comparing it to Brown's testimony.  Crittenden's report does not appear to be based on an assumption that Brown saw the neck hold, but that Brown should have conducted a proper intake screening, and if he had, he would have noticed that Decedent's condition was deteriorating.   Therefore, Crittenden's expert report is admissible and should be considered when ruling on the motion for summary judgment.

B. DUTY

Defendant asserts that Plaintiffs have not provided any evidence demonstrating that Defendant owed a duty to Decedent because the officers suspended the booking process and made Decedent unavailable for screening. This court must "determine, as a matter of law, whether the law recognizes a particular duty. If there is no duty, the defendant is entitled to a judgment as a matter of law. If a duty does exist, the jury then determines whether a breach of the duty that resulted in damages occurred." *Nelson v. Piggly Wiggly Cent. Inc.*, 701 S.E.2d 776, 780-81 (S.C. Ct. App. 2010).  "An affirmative legal duty may be created by statute, a contractual relationship, status, property interest, or some other special circumstance."  *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 136, 638 S.E.2d 650, 656-57 (S.C. 2006).

In *Babcock Center*, the Supreme Court of South Carolina reversed a trial court's grant of summary judgment to Babcock Center because it found that the center did owe a duty to monitor and supervise a client with special needs who was admitted to the center for care and treatment.

*Id.* at 657.  The court recognized that generally, there is no duty to act.  *Id.*  However, the court determined that the client's admission to the center created a special relationship with the client, which created a duty.  *Id.*  Additionally, the court determined that a duty was also established because the center voluntarily undertook the duty of supervising and caring for the client based on its contractual relationship with the Department of Social Services.  *Id.*  Similarly, the Decedent's status as a prisoner within the custody of Alvin S. Glenn Detention Center created a special relationship between Decedent and Defendant, the company charged with providing medical services at the Detention Center.

Plaintiffs have presented evidence, through the testimony of its expert Crittenden, that based on *Estelle v. Gamble*, medical providers within a correctional facility owe a duty of care to prisoners housed in that facility.  In *Estelle v. Gamble*, the Supreme Court of the United States held that pursuant to the Eighth Amendment, the government is obligated to provide medical care for incarcerated individuals because inmates "rely on prison authorities to treat [their] medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  The Court later recognized that states might contract with physicians and medical service providers to treat inmates to fulfill this duty, and in those scenarios, the medical service providers are seen as actors of the state who are authorized and obligated to treat prison inmates.  *West v. Atkins*, 487 U.S. 42, 54-55 (1988); *see also Conner v. Donnelly,* 42 F.3d 220, 225 (4th Cir. 1994) ("Regardless of the physician's employment relationship with the state, any physician authorized by the state to provide medical care to a prisoner exercises power that is traditionally the exclusive prerogative of the state.") Though both *West* and *Conner* were concerned with determining whether medical providers are state actors who can be sued under 42 U.S.C. § 1983, they are instructive in determining whether a duty exists in this case.  In both cases, the courts held that independent contractors were state

7

actors because they fulfilled a role traditionally reserved for the state and because those independent contractors were the only medical providers inmates could turn to when in need of medical treatment. Based on this same reasoning, it does not follow that medical providers in correctional facilities are state actors when fulfilling the state's medical obligation, but are somehow free of being burdened with the state's duty to provide adequate medical care.

Here, Defendant entered into a contract with Richland County to provide medical services to inmates housed within the County's facilities, including the Alvin S. Glenn Detention Center. (*See* ECF No. 82.)[2] Based on this contract, Defendant was required to "establish and maintain a Health Services Program for Richland County that is in compliance with national, state and local standards." (*Id.* at 26). As part of the program, Defendant was required to provide "medically necessary health care services in accordance with state and national standards . . . to meet the needs of the inmate population." (*Id.* at 29.) In providing medically necessary services, Defendant was also required to provide twenty-four hour, seven day a week nursing coverage, as well as on-call physician coverage. (*Id.*) Though Defendant argues otherwise, it is clear that Defendant owed a duty of care to Decedent. It appears to this court that Richland County contracted with Defendant to fulfill its Eighth Amendment duty to provide medical care to detainees in Richland County's custody. Contrary to Defendant's arguments, that duty is not affected by whether the officers suspended the booking process or whether Defendant's agent knew about the use of force. Those facts are relevant to the standard of care and whether the duty was actually breached, not to whether a duty existed. Thus, as a matter of law, this court finds that Defendant owed Decedent a duty of care.

---

[2] A copy of the contract did not accompany Plaintiffs' response to Defendant's Motion for Summary Judgment. However, pursuant to Fed. R. Civ. P. 56(e), the court requested that the parties produce a copy of the contract describing Defendant's contractual relationship with Richland County or the detention center. (*See* ECF No. 67.)

C. BREACH AND STANDARD OF CARE

Defendant next asserts that even if a duty existed, there is no admissible evidence that Defendant breached a duty of care to Decedent. In determining the standard of care to which the duty requires Defendant to conform, this court may "consider relevant standards of care from various sources in determining whether a defendant breached a duty owed to an injured person in a negligence case." *Madison ex rel. Bryant v. Babcock Center, Inc.,* 638 S.E.2d 650, 659 (S.C. 2006). "The standard of care in a given case may be established and defined by the common law, statutes, administrative regulations, industry standards, or a defendant's own policies and guidelines." *Id.* (citing *Peterson v. Natl. R.R. Passenger Corp.,* 365 S.C. 391, 397, 618 S.E.2d 903, 906 (2005)). Here, Plaintiffs have presented evidence of Defendant's own policies and procedures as well as the testimony of its own expert to establish the standard of care.

Based on its policies, Defendant's medical providers "have the freedom to practice their profession without interference from non-medical/dental personnel. Clinical decisions and actions regarding health care provided to patients are the sole responsibility of qualified health care professionals." (ECF No. 38-4 at 2.) Further, Defendant's policies provide the procedure for medical evaluation upon booking. Based on the policy, "the receiving screening is performed on inmates/juveniles on arrival at booking to ensure emergent and urgent health needs are met." (ECF No. 38-4 at 5.) This screening is conducted "immediately upon arrival at the facility in order to identify health conditions requiring immediate or ongoing interventions." (*Id.*) The screening serves a number of purposes, including the identification of "inmates/juveniles who are intoxicated or likely to experience withdrawal. (*Id.*) In conducting the screening, medical personnel are required to inquire into health conditions, past serious infectious diseases, symptoms of communicable illness, mental illnesses, history of suicidal ideations, drug use and

withdrawal symptoms, and other issues. (*Id.* at 5-6.) Medical personnel are also required to observe the appearance, behavior, state of consciousness, ease of movement, breathing, and skin of new inmates. (*Id.* at 6.) The screening forms are required to be completed no later than 24 hours after the arrival of the inmate. (*Id.* at 7.)

Defendant asserts that the evidence demonstrates that Defendant's agent, Brown, was unable to conduct the initial screening because officers at the detention center prevented him from conducting the initial screening. There is no such evidence in the record. Brown did testify that generally with intoxicated patients, he would conduct the screening in the booking area. (ECF No. 34-4 at 2.) If the inmate is too intoxicated or unresponsive, he would call his charge nurse to determine whether or not the prisoner would be admitted into the facility or sent to an emergency room. (*Id.*) In this case, Decedent was combative in the booking area so he was escorted to a holding cell to calm down. (ECF No. 34-3.) Brown testified that once Decedent was in the cell, he walked over to the cell and saw Decedent sitting up in the cell leaning against the wall. (ECF No. 34-4 at 3.) He briefly looked at Decedent and noticed that Decedent mumbled something, which he assumed to be cursing, and then Brown walked away. (*Id.*) Brown further indicated that "you can't assess a combative person or an inmate," so he was waiting on the officers to bring Decedent back to the booking area since Decedent seemed to have calmed down. (*Id.* at 4). Based on the testimony of Brown, he was waiting on the officers to bring Decedent into the booking area in order to conduct the screening. Defendant seems to argue that because Defendant's agent did not have the authority to open the cell door, and because Plaintiffs' expert agrees that the agent likely did not have the authority to open the cell door, Defendant did not breach its duty to Decedent. However, there is no indication that he could not have conducted the screening, at least in part, through the cell door. Furthermore, there is no

indication that he was prevented from conducting the screening after alerting the officers of a need to do so. Additionally, there is no indication that he even alerted the officers of the need to conduct the screening on Decedent.

Based on Defendant's own policies, medical providers at the facility have the sole responsibility to make health care decisions and those decisions are to be made without interference from other personnel. In carrying out this responsibility, Defendant's policies require medical personnel to conduct a medical screening of new inmates immediately upon arrival to the facility, and the corresponding forms are to be completed within twenty-four hours. According to the evidence, it is undisputed that Defendant's agent did not conduct an initial screening of Defendant. The evidence presented by Plaintiffs through the deposition of its expert, Amy Crittenden, demonstrates that there is a question for the jury as to whether Defendant's agent could have and should have conducted the intake screening under the circumstances. (*See* ECF No. 38-7.) Furthermore, Crittenden testified that even though Defendant's agent likely did not have the authority to open the cell door, he could have asked questions of Decedent when he went to look in on the inmate, but he did not. (ECF No. 38-7 at 25-26.) Thus, based on the standard of care as established by Plaintiffs' expert and Defendant's own policies, this court finds that there is a genuine dispute of material fact regarding whether Defendant adhered to this standard. Accordingly, summary judgment is inappropriate in this case.

## IV.   CONCLUSION

Pursuant to *Nelson v. Piggly Wiggly Cent. Inc.*, it is this court's task to determine whether, as a matter of law, a duty of care exists such that the case can move beyond summary judgment. 701 S.E.2d at 780-81. Here, this court finds that, as a matter of law, Defendant owed a duty of

11

care to Decedent. This court further finds that there is a genuine issue of material fact as to the appropriate standard of care and whether Defendant breached the duty to Decedent by violating the standard of care. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 34) is **DENIED**.

    **IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

June 14, 2016
Columbia, South Carolina

12